THE MANCHESTER BUILDING AND LOAN ASSOCIATION,
PLAINTIFF AND DEFENDANT IN ERROR, v. GEORGE
W. ALLEE AND BERNARD KATZ, DEFENDANTS AND
PLAINTIFFS IN ERROR.

Argued November 10, 1908—Decided July 11, 1910.

1. Where a bond for the payment of money is placed in escrow to
be delivered by the depositary to the obligee upon the perform-
ance of a condition, the depositary'is a special agent, and cannot
make a good delivery to the obligee until the condition is per-
formed, although the obligee may have no knowledge of the con-
dition imposed.

2. The fact that such condition is *contra bonos mores* does not de-
prive the obligor of the defence that the bond was delivered to
the obligee without the performance of the condition upon which
it was put in escrow. It is the performance of the condition,
and not the second delivery, that gives legal existence to the obli-
gation, and if it only acquires vitality upon the performance by
the obligee of a condition inimical to public policy, even perform-
ance of such condition would not give it vitality, for it cannot
be said that either party contemplated a lawful delivery.

---

On error to Passaic Circuit.

Before Justices REED, BERGEN and MINTURN.

For the plaintiffs in error, *David H. Builder.*

For the defendant in error, *Michael Dunn* and *Jacob Wil-
lard De Yoe.*

The opinion of the court was delivered by

BERGEN, J. The defendant Allee, as secretary of the plaint-
iff association, embezzled $14,000, and being threatened with
prosecution, undertook to make restitution. He paid $9,000
in cash, gave a bond with the defendant Katz as surety for $3,-
000, and another bond for $2,000, with James A. Graham as
surety. These bonds were delivered to the association by Wood
McKee, Esq., acting as the attorney of Allee.

Allee was indicted and convicted of embezzlement, and sentenced to one year in the state prison, and thereafter this suit was brought to enforce the payment of the bond for $3,000. The defence which Katz sets up is that he signed the bond upon the understanding that it was to be retained by McKee, and not delivered to the association should Allee be imprisoned as a consequence of the criminal proceedings then pending against him, and should not have been delivered to the plaintiff because the condition of its delivery had not been fulfilled.

This suit was tried and the plaintiff had a verdict upon which the judgment now under review was entered.

The first point raised by the plaintiff in error is that the trial court refused to nonsuit because no proof was made that the plaintiff had possession of the bond. Aside from the question whether an inference of possession could not be drawn from the production in court by plaintiff's counsel of the bond, the case subsequently disclosed that the bond had been delivered to plaintiff, although it is claimed improperly, therefore there was no error in the refusal to nonsuit upon this ground.

The second point urged is based upon the refusal of the court to admit testimony tending to show that the bond was not lawfully delivered to the plaintiff. On this point it is contended that the bond was executed and put in the hands of McKee, the attorney of defendant Allee, to be held in escrow and only delivered if Allee was not sentenced to imprisonment, and the claim of the defendant is that there was error in overruling evidence which, if admitted, would have shown that there was an agreement between Katz and Allee, that although the bond was to be given to Allee's attorney, it was not to be delivered to the plaintiff should Allee be imprisoned. What was offered was (*a*) a conversation between Katz, the witness, and Allee; (*b*) a conversation between Katz, Allee and one Van Winkle, a person in no way interested in the transaction; (*c*) instructions given by Katz to Allee and Van Winkle, regarding the delivery of the bond to the plaintiff. I think this evidence was properly excluded, for the character of the condition of a delivery in escrow cannot affect the position of the

recipient unless communicated to him. All evidence offered to show the terms of delivery made known to the depositary by Katz, the obligor, or on his behalf, was admitted, and the refusal to admit conversations between the obligors and other parties in the absence of McKee, the depositary, was not error.

The third, fourth and fifth points presented by plaintiff in error and covered respectively by assignments of error, numbered 19, 20 and 26, relate to the admission and exclusion of evidence, but they exhibit no substantial error, as the rules applied were fairly within the range of judicial discretion.

The remaining assignments deal with alleged errors assigned upon exceptions to the charge of the trial court. The record discloses that the plaintiff in error presented fifteen requests to charge and had bills of exception sealed as to all which were refused, and also excepted to certain parts of the charge, indicating them in the most general way, and included all in one general bill of exception. An exception taken in this form is too general. Still disregarding this exception, those taken to the refusal to charge some of the requests seem to meet all the material points aimed at by the general exception to the charge.

The eighth request to charge was that if the jury found that the bond was delivered to McKee by Katz upon the express condition that it was not to be delivered to the plaintiff should Allec be sent to prison, that McKee thereupon became a special agent, and if he delivered the bond in violation of his instructions, the plaintiff could not recover against the defendant, even though the plaintiff did not know that such instructions had been given to Mr. McKee. Instead of charging this, the trial court left the question to the jury as to whether McKee was a special or a general agent, and proceeded to say that if he was a general agent, the association was not bound to inquire as to the extent of his authority.

Under the doctrine laid down by the Court of Errors and Appeals in *Black* v. *Shreve*, 2 *Beas.* 455, if the condition was imposed upon McKee by Katz, McKee was a special agent and he was bound by the condition whether the association knew of it or not. Therefore, the remarks by the court in respect to

the character of McKee's agency and the notice to the association in answer to this and other requests were, as a general proposition, inaccurate, and the refusal to charge as requested was an error requiring the reversal of this judgment, unless it is cured by another phase of the case raised by the charge and the requests to charge based thereon, and that is whether, if the condition imposed upon McKee was one which was obnoxious to public policy, it would defeat the right of the plaintiff to recover. This question was raised by the court's remark to the jury that if the condition of the delivery of the bond was an agreement to interfere with the wheels of justice, such condition is illegal, and would be no defence even if the bond was delivered in violation of the condition. The court distinguished between a condition which involved the interference of the building and loan association or its agents, with the action of the grand jury to prevent an indictment, and one which required the interference of the building and loan association in securing immunity from imprisonment of Allee when the court imposed sentence.

The court charged that if the condition was of the former kind, namely, an interference with the work of the grand jury, the condition was obnoxious to public policy, and that the defendants could not invoke such a condition as a defence to the action. In the first place, I think the distinction between these two conditions, as drawn by the court, is unsubstantial; and its want of substance is exhibited by recalling what the condition laid upon McKee really was. Katz says that he told McKee that "I would sign the bond providing I could get the freedom of Allee; that is all," and that McKee said that the bond would not be given up without giving Mr. Allee his freedom; Van Winkle testified that McKee said he would hold the bond, and only deliver it in case there was no indictment; Graham said McKee told him the bond was to be held as his, and not to be used if Allee was sent to state prison; Allee said that it was understood if he was indicted, and the indictment was reconsidered, or if he was not prosecuted under it, the bond was to be used, but if he was prosecuted and sent to jail, the bond was not to be used. Van Nordt said it was only to be

delivered if Allee was not imprisoned; that there was an understanding that the members of the association would go before the grand jury and notify it that the indebtedness had been fixed up.

It would be difficult for a jury, from this testimony of the plaintiff's witnesses, if believed, to say what condition Katz imposed upon McKee, but taking any view of it, whether the condition was that the association should go before the grand jury and prevent an indictment, or that the association should not prosecute, or a condition that the bond should not be delivered to the association unless Allee got his freedom, that is, went scot free, the condition in any of these phases was inimical to public policy.

McKee was the agent of Allee. His sole purpose was to do everything in his power to enable Allee to make restitution and escape punishment, and if the bond was left with McKee to be delivered to the grantee only upon the happening of a contingency which could only result from an illegal act, such condition would avoid the obligation because its delivery, and therefore its legal existence, depended upon an act *contra bonos mores.* The use of this bond in the hands of McKee, under such condition, was a bribe held out to the association to exert its influence in inducing the court to refrain from an imposition of sentence of imprisonment. In such a shape, the condition was as obnoxious to public policy as though the bond had been directly delivered to the association itself upon the understanding that that would secure the immunity of Allee from imprisonment. An agreement to secure immunity in sentence, or pardon after sentence, is obnoxious to the rule of public policy. The general tendency of such an agreement is opposed to the interest of the public, and it is invalid even though the intent of those contracting was good, and no injury could result to the public in a particular case. It is the evil tendency of the contract, and not its actual injury to the public in a given case, that is the test. I am of opinion that the defendant was entitled to have the jury instructed as stated in the request to charge as above set out, and that its refusal was error.

There was evidence in the case from which an inference might have been properly drawn that one De Yoe was acting in this matter for the plaintiff, and that he heard Katz state the conditions upon which he was willing to become surety on the bond, and that he knew that the bond was to be held in escrow by McKee and not delivered to the plaintiff if Allee was imprisoned, or proceeded against criminally, and that the plaintiff, or someone acting for it, was to go before the grand jury and make known to it that Allee had made restitution for the purpose of influencing the grand jury either to refuse a bill of indictment or to reconsider its finding, if one had been ordered, and upon this proof the eleventh request to charge is based. That request is as follows: "If the jury believe that Mr. De Yoe was acting as the agent of the plaintiff in securing the bond in question, any statement made to him by the defendant Katz concerning said bond was notice to the plaintiff of such statement." To this the court charged that if the jury believed that De Yoe was the general agent acting for the building and loan association, and if notice was given to him that there was a *lawful* condition attached to the delivery of the bond, then notice to him was notice to his principal. The effect of this, taken in connection with what the court had charged on this subject, was to instruct the jury that if the condition was unlawful, notice of such condition was not chargeable to the principal. This instruction is clearly erroneous, for if the plaintiff had notice of any condition, not performed, whether lawful or unlawful, it was bound by the limitations imposed upon the depositary, and if the condition was illegal, the illegality related to the entire transaction, for a deed delivered in escrow will be inoperative in the hands of the obligee, "by whatever means he may get possession of the instrument, until the condition is performed. It is the performance of the condition, and not the second delivery, that gives it vitality and existence as a deed." *State Bank* v. *Evans*, 3 *Gr.* 155, and where a deed is delivered to a stranger, upon condition, and apt words are used in the delivery thereof, it is of no more force, until the condition be performed, than if it had never been delivered. If the condition is unlawful, it

never can, in contemplation of law, be performed, and the parties cannot be said to have intended such a delivery as to give it a lawful existence, nor would the performance of such a condition give the obligation vitality.

For the reasons given, this judgment will be reversed and a new trial ordered.